**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 24 2001**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

HENRY B. O'NEAL,

        Plaintiff-Appellee,

v.

FERGUSON CONSTRUCTION
COMPANY,

        Defendant-Appellant.

No. 99-2037

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-97-1269-MV/LFG)

W. T. Martin, Jr., of Martin & Shanor, L.L.P., (Stephen S. Shanor, with him on
the briefs), Carlsbad, New Mexico, for Appellant.

Holly Rene Harvey, of Toulouse & Associates, P.A. (John G. Travers, with her on
the brief), Albuquerque, New Mexico, for Appellee.

Before **TACHA,** Chief Judge**, McWILLIAMS,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Plaintiff Henry B. O'Neal was terminated from his job one day after his attorney sent a letter to his employer, Ferguson Construction Company ("Ferguson"), accusing the company of reassigning O'Neal in retaliation for his filing race discrimination and retaliation claims with the Equal Employment Opportunity Commission ("EEOC"). O'Neal filed suit against Ferguson under 42 U.S.C. § 2000e-3(a) ("Title VII") and 42 U.S.C. § 1981, alleging hostile work environment and retaliation. The jury found for O'Neal on his retaliation claim but not on his hostile work environment claim; the jury awarded O'Neal $302,721.25 in compensatory damages and $3,500 in punitive damages. Ferguson filed motions for judgment as a matter of law and remittitur, which the district court denied. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

## II. BACKGROUND

O'Neal worked for Ferguson for approximately thirty-two years. Until a few days before his termination, O'Neal spent twenty-nine of those years as the sole person responsible for maintaining and servicing Ferguson's vehicle fleet. For most of the twenty-nine years, O'Neal worked a split shift from 5:00 a.m. until 10:00 a.m. and from 4:00 p.m. until 9:00 p.m.

In the early 1990s, Mark Weiser became president of Ferguson. A former Ferguson employee testified at trial that sometime in 1994 Weiser told him that when he "got rid of Henry," he would never have another "black son of a bitch" working at Ferguson. O'Neal testified that around the same time, Weiser stopped interacting with him. O'Neal further testified that Nat Rendon, a Ferguson vice president who was responsible for hiring and firing employees, regularly told racial jokes which included derogatory, offensive terms to African-Americans.

On October 22, 1996, O'Neal filed a charge with the EEOC in which he alleged racial discrimination in the workplace. On October 28, the EEOC notified Ferguson of the charge. On January 13, 1997, O'Neal's hours were reduced from fifty-six to thirty-three hours per week.

On January 29, 1997, O'Neal filed a second charge with the EEOC in which he claimed Ferguson retaliated against him for filling the previous EEOC charge by reassigning his work duties and reducing his work hours. On June 30, 1997, Ferguson received a copy of O'Neal's Right to Sue Notice from the EEOC on the racial-discrimination claim. O'Neal's work continued to be reassigned to other employees.

On September 10, 1997, Ferguson received a Right to Sue Notice from the EEOC on the retaliation claim. On September 15, O'Neal was transferred to Ferguson's supply warehouse. O'Neal reported to his new assignment the next

day. On September 18, O'Neal's attorney wrote a letter to Ferguson, demanding that O'Neal be reinstated in his old position and accusing the company of reassigning O'Neal in an attempt to retaliate against him for filing EEOC claims. O'Neal was fired the next day.

On September 25, O'Neal filed a lawsuit against Ferguson, alleging hostile work environment and retaliation, both in violation of Title VII and 42 U.S.C. § 1981. The case eventually went to trial. At the close of O'Neal's case-in-chief, Ferguson moved for judgment as a matter of law ("JMOL"); the district court denied the motion. Ferguson again moved for JMOL before submission of the case to the jury; the district court denied the renewed motion for JMOL.

After finding for O'Neal on his retaliation claim, the jury awarded him $302,721.25 in compensatory damages and $3,500 in punitive damages. The jury did not find for O'Neal on the hostile work environment claim. Ferguson renewed its motion for JMOL and filed a motion for remittitur. The district court denied these motions.

On appeal, Ferguson makes three arguments. First, it claims the trial court committed reversible error in submitting O'Neal's retaliation claims to the jury because the evidence was legally insufficient to support it. Second, Ferguson claims the trial court improperly instructed and submitted damage claims to the jury for lost employment benefits and future emotional distress. Third, it claims

the trial court committed reversible error by failing to apply the statutory cap under 42 U.S.C. § 1981a to O'Neal's compensatory damage award. Ferguson does not appeal the jury verdict on the hostile work environment claim.

## III. DISCUSSION

### A. Retaliation Claims

At trial, O'Neal prevailed on two retaliation claims. The jury found that Ferguson retaliated against O'Neal by reducing his work hours. Additionally, the jury found that Ferguson retaliated against O'Neal by terminating his employment. Ferguson claims the district court erred in denying its motion for JMOL because O'Neal's evidence was legally insufficient to establish a prima facie case of retaliation or to establish pretext in the face of evidence of a business justification.

This court reviews a district court's denial of a motion for JMOL *de novo*, applying the same standard as the district court and construing the evidence in the light most favorable to the nonmoving party. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). Unless the evidence so overwhelmingly favors "the movant as to permit no other rational conclusion, judgment as a matter of law is improper." *Id*. (citation omitted). In challenging the sufficiency of the evidence in this context, Ferguson must establish that no reasonable person could

find retaliatory motive in Ferguson's decisions to reduce O'Neal's hours and later terminate him.

To establish a prima facie case of retaliation, O'Neal must establish that: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Kendrick v. Penske Transp. Srvs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000); *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 & n.1 (10th Cir. 1998). Once O'Neal makes a prima facie showing, Ferguson must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). O'Neal must respond by demonstrating Ferguson's asserted reasons for the adverse action are pretextual. *See Perry v. Woodward* 199 F.3d 1126, 1135 (10th Cir. 1999).

**1. O'Neal's Reduction in Hours**

Ferguson concedes that O'Neal's filing of an EEOC claim on October 22, 1996, constitutes a protected activity. Furthermore, it does not take issue with whether O'Neal's reduction in work hours on January 13, 1997, was an adverse employment action. Ferguson argues that the absence of a causal connection between the filing and reduction in hours, however, prevents O'Neal from establishing a prima facie case of retaliation.

A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). "[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted). Because O'Neal presented additional evidence from which a reasonable jury could find causation, this court need not address whether two months and three weeks, by itself, is sufficient to support a prima facie case of retaliation.

At trial, O'Neal testified that after he filed his October EEOC claim Ferguson took "[his] work away from [him]." Specifically, he discovered that the field service mechanic began performing a significant number of O'Neal's regular duties. O'Neal indicated that from the time he filed his first complaint until the time Ferguson reduced his hours, trucks began to be left in the field, where the mechanic was changing the oil, oil filter, and air filter, jobs previously assigned

-7-

to O'Neal. O'Neal further testified that the field mechanic explained to him several times, "They ought to give you your work because I can't handle it." O'Neal's testimony suggests that the work was not reallocated to the mechanic because it was more efficient for the mechanic to perform the work in the field. In fact, the mechanic indicated to O'Neal that he did not have time to perform all of the work O'Neal usually performed on the trucks, including greasing them and checking the carrier bands and universal joints. The jury could have inferred from this evidence that the reallocation of responsibilities soon after the filing of the EEOC claim was a precursor to the ultimate reduction in O'Neal's hours, thus providing the causal connection between the EEOC filing and the adverse employment action.

O'Neal adduced other evidence during his case-in chief which supports an inference that Ferguson retaliated against him. Harvey Marquez, a former Ferguson employee who worked in the mechanic shop, testified that he knew of no other employee whose hours were reduced at the time of O'Neal's hour reduction. Pete Rasmussen, a former Ferguson truck driver, testified on cross-examination during O'Neal's case-in-chief that he did not see any field workers being sent home during this period of time.

Construing the evidence in the light most favorable to O'Neal, this court concludes O'Neal presented sufficient evidence to establish an inference of

retaliatory motive and thus a causal connection between his EEOC filing and reduction in hours. Ferguson argues that even if O'Neal made a prima facie showing, however, he did not establish pretext.

During its case-in-chief, Ferguson presented two legitimate business reasons for reducing O'Neal's hours. It claimed the company changed the manner in which vehicles were being handled, thereby leaving O'Neal with little or no work during his evening shift. It also claimed the overall economic conditions at Ferguson resulted in layoffs and reductions in hours for other employees. Ferguson claims O'Neal presented "scant and insufficient" evidence to rebut the evidence it introduced in support of its facially nondiscriminatory business reasons.

In support of Ferguson's first justification, Mark Weiser testified that the management team decided that the key people in the company, including the operators, lead hands, and foremen, should take their trucks home at night, thereby eliminating some of O'Neal's duties during his evening shift. Nevertheless, the testimony of a veteran Ferguson employee, Fred Hemingson, who also testified during Ferguson's case-in-chief, contradicted Weiser's testimony. He indicated that the foremen and operators had been taking their trucks home for the previous ten to fifteen years. Further, Hemingson testified

that the lead hands began taking their trucks home in 1993 or 1994—more than three years before O'Neal's hours were reduced.

In support of Ferguson's second justification, Rita Staton, Ferguson's office manager, testified that everyone at the company had their hours reduced around the time of O'Neal's hour reduction. Hemingson's testimony, however, was to the contrary. He indicated that although there were field workers who were not being sent out on jobs, he was not aware of other employees in the yard whose hours were cut.

Although Ferguson was under no obligation to support its justification, the testimony Ferguson presented did not fully support its purported business reasons; in some respects the evidence contradicted the purported reasons. This court has held that a rational fact-finder can infer pretext from such weaknesses, inconsistencies, or contradictions. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Further, testimony offered during O'Neal's case-in-chief directly challenged Ferguson's claims that there was less work for O'Neal to perform and that the economic slowdown resulted in layoffs and reductions in hours for other employees. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2106 (2000) ("[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the

issue of whether the defendant's explanation is pretextual." (quotation omitted)).

O'Neal testified that work was being taken away from him and assigned to a Ferguson employee who did not have the time to perform the work. Two former Ferguson employees testified that other employees were not being sent home without work or having their hours reduced. The jury obviously afforded the testimony of O'Neal's witnesses more credibility than the testimony of Ferguson's witnesses. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 551 (10th Cir. 1999) ("[T]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." (quotation omitted)).

The evidence adduced during O'Neal's case-in-chief and even some of the evidence proffered by Ferguson itself, along with the reasonable inferences drawn therefrom, provided sufficient evidence to rebut Ferguson's asserted nondiscriminatory business reasons and thus to support a finding of retaliation. The evidence is susceptible to at least some reasonable inferences supporting O'Neal's claim. *See James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992 (10th Cir. 1994). Accordingly, O'Neal's first retaliation claim was properly submitted to the jury for consideration.

**2. O'Neal's Termination**

In regard to his second retaliation claim, O'Neal asserts he engaged in protected activity by filing two EEOC complaints and by sending a letter to Ferguson from his attorney. Although Ferguson concedes that both EEOC complaints constitute protected activity, it claims the long period of time between these filings and O'Neal's termination fails to support a causal connection. Further, it disputes the protected status of the letter. This court need not address the alleged causal connection between the EEOC filings and the adverse action because we agree with O'Neal's characterization of the sending of the letter as a protected activity.

Informal complaints to superiors constitute protected activity. *See Pastran v. K-Mart, Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000); *Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999). O'Neal relies on a similar rule from other circuits to support his claim that the attorney letter is entitled to protected status. Ferguson distinguishes this case from such authority by fixating on the fact that O'Neal's attorney wrote and sent the letter rather than O'Neal himself. Whether O'Neal or his attorney wrote the letter is wholly irrelevant. The letter was an informal complaint which disclosed O'Neal's dissatisfaction with his new position. It specifically characterized the reassignment as retaliatory conduct. *Cf. Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) ("[Plaintiff's] letter to Human Resources

complains about unfair treatment in general and expresses his dissatisfaction with the fact that someone else was awarded the position, but it does not specifically complain about age discrimination. Accordingly, the letter does not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation."). Thus, this court concludes the sending of the letter on September 18, 1997, constitutes a protected activity.

The last two elements of O'Neal's prima facie case are easily established. O'Neal suffered an adverse employment action when he was fired by Ferguson. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Roberts*, 149 F.3d at 1104. Because this adverse action followed the protected conduct by one day, a causal connection is established. *See Burrus*, 683 F.2d at 343.

On appeal, Ferguson argues that even if O'Neal established a prima facie case of retaliation, he failed to rebut Ferguson's legitimate business reasons for terminating him. O'Neal's prima facie case and testimony rejecting Ferguson's asserted justification, however, provide sufficient evidence to enable the jury to conclude that Ferguson fired O'Neal in retaliation for the letter. *See Reeves*, 120 S. Ct. at 2106, 2109.

Ferguson claims O'Neal was fired because he refused to stay at the warehouse, failed to perform assigned tasks, and interfered with other employees' work. Warehouse supervisors Fred Hemingson and Bill Rea testified that during

the three days O'Neal worked in the warehouse before his termination, his time was split between clearing his belongings from his old workstation, seeing a doctor, running an errand for Hemingson, and talking to other Ferguson employees.

O'Neal testified, however, that he stayed in the warehouse and performed his job as required, indicating that he had no time to visit other employees. O'Neal testified as to the duties he actually performed while working in the warehouse, such as assisting other Ferguson employees in leaving for the field, loading and stacking cement, and retrieving items from the inventory.

The jury obviously afforded O'Neal's testimony more credibility than the testimony presented by Ferguson in response to O'Neal's prima facie showing, thereby enabling it to infer pretext. *See Medlock*, 164 F.3d at 551. Further, the close temporal proximity between O'Neal's September 18 letter and his termination the next day support the jury's finding of pretext. *See Pastran*, 210 F.3d at 1206. This court concludes O'Neal's testimony and the close temporal proximity are sufficient to support O'Neal's retaliation claim. Accordingly, it was not error for the district court to submit the issue to the jury.

**B. Lost Employment Benefits and Future Emotional Distress**

Ferguson appeals the district court's instruction to the jury on the issues of lost employment benefits and future emotional distress. On appeal, it claims the

court improperly instructed the jury to consider these issues in the event it found for O'Neal even though there was insufficient evidence to send the issues to the jury.

This court reviews a "district court's decision to give a particular jury instruction for abuse of discretion; ultimately, however, we apply a *de novo* standard of review to determine the propriety of an individual jury instruction to which objection was made at time of trial." *Osteguin v. S. Pac. Transp. Co.*, 144 F.3d 1293, 1295 (10th Cir. 1998) (citation omitted). We must determine whether the instructions in their entirety "properly stated the applicable law and directed the jury to consider matters within its province." *Gardetto v. Mason*, 100 F.3d 803, 816 (10th Cir. 1996).

The evidence supporting O'Neal's damage awards for lost employment benefits and future emotional distress is not overwhelming. When viewed in light of the district court's instructions as a whole, the care with which the jury was instructed to determine damages, and the testimony at trial, however, this court concludes the district court properly submitted the issues to the jury.

After properly instructing the jury on the elements necessary to prove hostile work environment and retaliation, the district court instructed the jury that it must determine the amount of money appropriate to compensate O'Neal if it found Ferguson liable. Two of the damage elements described by the court were

(1) the lost employment benefits of retirement, vacation, sick leave, and medical leave and (2) the monetary value of mental anguish and suffering O'Neal would experience in the future as a result of the wrongful conduct.

O'Neal bore the burden of providing evidence at trial to support his damages claim. *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493-94 (10th Cir. 1994). In support of his lost employment benefits claim, O'Neal offered the testimony of David Hamilton, an economist who testified that a loss in benefits amounted to between fifteen and thirty-nine percent of gross income depending on the industry. Hamilton further disclosed his calculation of O'Neal's loss in gross income that resulted from his termination.

On cross-examination, O'Neal questioned Rita Staton about the quality of benefits received by Ferguson employees. Staton testified that she did not know the monetary value of Ferguson's fringe benefit plan. She indicated, however, that Ferguson was exceedingly generous to its employees, especially in terms of the portion of family dependant health care coverage paid by Ferguson. O'Neal received such coverage through the company. Staton further testified that Ferguson had a pension plan for its employees in which O'Neal participated.

Although the evidence produced by O'Neal did not provide the jury with an exact dollar amount as to the actual loss in employment benefits, any uncertainty in determining the amount O'Neal would have earned but for his unlawful

-16-

termination is resolved against Ferguson. *See id.* at 1494. Hamilton's testimony sufficiently informed the jury on the value range for lost benefits based on O'Neal's lost gross income. The jury was entitled to credit Hamilton's testimony with the same weight it would give any other testimony. *See Moe v. Avions Marcel Dassault-Breguet Aviation*, 727 F.2d 917, 929-30 (10th Cir. 1984). Staton's statements provided the connection between Hamilton's testimony concerning the typical benefits and the benefits in this case.

Further, the district court explicitly cautioned the jury against basing its determination of damages on speculation, guess, or conjecture. The district court instructed the jury to base its damage award on evidence alone. The connection Staton's testimony provided enabled the jury to base its lost benefits determination on the evidence adduced at trial rather than on mere speculation. Accordingly, the district court properly instructed the jury to consider lost employment benefits.

As for the future emotional distress damage award, the district court properly submitted the issue to the jury. O'Neal testified at trial that he began seeing a psychiatrist before being terminated but could not afford further treatment after his termination. He further testified about his inability to sleep and loss of appetite which continued through trial. Mrs. O'Neal corroborated Mr. O'Neal's statements, testifying that his condition had gotten worse since his

termination from Ferguson. She testified that her husband was more worried and very unhappy as compared to when she first met him.

This court concludes the testimony of Mr. and Mrs. O'Neal enabled the jury to reasonably determine that Mr. O'Neal would suffer future emotional distress.[1] Thus, the district court's jury instruction on future emotional distress was proper.

## C. Compensatory Damages Cap

Ferguson argues the district court committed reversible error when it allowed O'Neal to recover under 42 U.S.C. § 1981. It claims O'Neal's remedy lies in Title VII, subjecting the compensatory damage award to the statutory cap contained in 42 U.S.C. § 1981a(b)(3). Compensatory damages awarded under § 1981 are not subject to such a cap. *See* 42 U.S.C. § 1981a(b)(4); *see also Pavon*

---

[1]Ferguson points to the absence of an expert witness, such as a psychologist or psychiatrist, to support its claim that no evidence was presented as to future emotional distress. In *Roberts*, this court indicated that medical or other expert evidence was not required to prove emotional distress. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1105 n.4 (10th Cir. 1998). The case, however, did not distinguish between present and future emotional distress. Ferguson offers no reason for this court to do so, nor does it cite authority in support of its suggestion that a medical expert is necessary to establish future emotional distress. We will not make arguments for Ferguson that it did not make in its briefs. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir.1992); Fed. R. App. P. 28(a)(9)(A) ("[T]he argument . . . must contain appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies."). Accordingly, we decline to decide whether a distinction can be drawn between proving present and future emotional distress in regard to medical or other expert evidence.

*v. Swift Transp. Co.*, 192 F.3d 902, 910 n.2 (9th Cir. 1999); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1062 (8th Cir. 1997).

The district court denied Ferguson's Motion for Remittitur, allowing the $305,721.25 compensatory damage award to stand. Generally, a district court's denial of a motion for remittitur is reviewed for abuse of discretion. *See Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1416 (10th Cir. 1997). When statutory interpretation or legal analysis underlies the award, however, the matter is a question of law subject to *de novo* review. *See Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1176 (10th Cir. 2000).

Before turning to its argument about the statutory cap, Ferguson questions whether at-will employees such as O'Neal can recover under 42 U.S.C. § 1981. This court's pronouncement in *Perry* explicitly indicates that "the employment-at-will relationship encompasses sufficient contractual rights to support section 1981 claims for wrongful termination." 199 F.3d at 1133. Thus, the mere nature of O'Neal's at-will relationship with Ferguson does not bar his recovery under § 1981.

Relying on case law superseded by federal statute, Ferguson encourages this court to reject the district court's determination that O'Neal can recover under § 1981 because the jury found no hostile work environment and, therefore, no racial animus. Both Title VII and § 1981 support a cause of action for

retaliation and require a plaintiff to establish the same prima facie elements to recover. *See Roberts*, 149 F.3d at 1103 n.1, 1110. Ferguson is correct in suggesting that § 1981 requires a showing of racial animus. *See Patrick v. Miller*, 953 F.2d 1240, 1250 (10th Cir. 1992). The evidence presented to the jury, however, reveals that racial animus motivated Ferguson's retaliation against O'Neal.

O'Neal presented the same evidence for both his hostile work environment and retaliation claims. Although O'Neal failed to prevail on his hostile work environment claim, the evidence of racial animus is relevant to his retaliation claim. In an earlier case in which a jury found for the plaintiff on his retaliation claim but not on his hostile work environment claim, this court viewed evidence of racial animus as relevant to the credibility of the employer's claimed nondiscriminatory reasons for retaliating against plaintiff. *See Roberts*, 149 F.3d at 1108. The evidence included the testimony of defendant's employee who claimed plaintiff's supervisor referred to plaintiff as a "nigger driver" and said, "I wish that jigaboo would move back to Kansas City." *Id.* at 1107 (quotation omitted). This court concluded plaintiff's "efforts to attribute racial animus to [the retaliatory incidents] in furtherance of his hostile work environment claim necessarily relate to the establishment of pretext in the retaliation claims." *Id.* at

1111. Even though the jury rejected the hostile work environment claim, it was free to rely upon overlapping evidence of racial animus in finding retaliation.

This case cannot be distinguished from the scenario in *Roberts*. At trial, a former Ferguson employee testified that Weiser told him that when he got rid of O'Neal there would never be another "black son of a bitch" who worked there as long as he owned the company. O'Neal testified that shortly after making this comment Weiser stopped interacting with him and later decreased his work responsibilities. Such evidence of racial animus cuts against Ferguson's alleged reason for firing O'Neal and supports the jury's finding of retaliation under § 1981.

Accordingly, this court affirms the district court's determination that O'Neal's retaliation claim is not subject to the statutory cap contained in § 1981a(b)(3).

## IV. CONCLUSION

This court **AFFIRMS** the district court's denial of Ferguson's motions for JMOL and remittitur. The district court properly submitted O'Neal's retaliation claims and his damage claims for lost employment benefits and future emotional distress to the jury. Further, O'Neal's compensatory damage award is not subject to the statutory cap provided in 42 U.S.C. § 1981a(b)(3).