**Laurie A. CAMPBELL, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Postmaster General, William J. Henderson, Defendant.**

**No. 00–2040–JWL.**

United States District Court,
D. Kansas.

March 2, 2001.

Carston C. Johannsen, Gould Law Offices, Chtd., Lenexa, KS, Korey A. Kaul, Lamfers & Assoc., L.C., Kansas City, MO, Mark A. Buchanan, Kansas City, MO, for plaintiff.

Melanie D. Caro, Office of U.S. Atty., Kansas City, KS, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Laurie Campbell filed suit against defendant alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, plaintiff claims that she was subjected to sexual harassment by her supervisor and that, after she complained about her supervisor's conduct, her supervisor retaliated against her. This matter is presently before the court on defendant's motion for summary judgment (doc. #50). As set forth in more detail below, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed in its entirety.

## I. Facts [1]

The following facts are either uncontroverted, or related in the light most favorable to plaintiff, the nonmoving party. In March 1997, plaintiff began her employment at defendant's Blue Valley branch in Overland Park, Kansas as a distribution clerk. She was supervised by Daniel Strauss, among others. According to plaintiff, Mr. Strauss created a hostile work environment for plaintiff by sexually harassing plaintiff and other female employees. In that regard, plaintiff alleges that Mr. Strauss patted her inner thigh in July 1995 [2] while plaintiff was training for a position as a window distribution clerk; that in September 1998 Mr. Strauss grabbed and firmly held plaintiff's wrist while giving her a work-related instruction; that in February 1999 Mr. Strauss grabbed and held plaintiff's upper arms for 10 to 15 seconds while giving her a work-related instruction; that Mr. Strauss "occasionally" hit plaintiff on the back or arm "as if he were swatting a fly;" and that on three or four occasions, Mr. Strauss bumped into her or rubbed his shoulder against her back. Plaintiff avers that she was forced to avoid Mr. Strauss's efforts to bump or touch her at least 20 to 30 times, or several times each month. More factual details concerning these allegations will be provided below as necessary.

Plaintiff also alleges that she witnessed Mr. Strauss's "harassment" of other women in the workplace, particularly Leticia Stumpner and Rhonda Ford. In that regard, plaintiff avers that from March 1997 through February 1999 she "repeatedly" saw Ms. Stumpner and Mr. Strauss hugging each other. She also testified that she knows that Mr. Strauss gave Ms. Stumpner numerous back rubs at work and that, on one occasion, she witnessed Mr. Strauss run his fingers through Ms. Stumpner's hair. Plaintiff also avers that she saw Ms. Ford and Mr. Strauss "hug, rub their hands up and down each other's backs several times."

On March 2, 1999, plaintiff contacted an EEO counselor to discuss Mr. Strauss's conduct. According to plaintiff, beginning on March 4, 1999, Mr. Strauss retaliated against plaintiff for contacting the EEO counselor. Specifically, plaintiff claims that on March 4, 1999, Mr. Strauss approached her at work and stated "I know you have a family and want your days off" and "I thought you and I were friends, so why did you go outside the unit, because we could have resolved the problem here." Plaintiff avers that she "interpreted these statements to mean that he would give [her] favorable scheduling treatment in the future if [she] would cooperate by not pursuing the complaint." Plaintiff further avers that Mr. Strauss told her several times during this conversation, "You will have to excuse me, I am just a man." Finally, plaintiff testified that after her March 4, 1999 conversation with Mr. Strauss, Mr. Strauss did not speak to her or come near her, but he would "walk right by [her] and stare at [her] while he walked by." In

---

**1.** As described in the text of this opinion, the court grants summary judgment on the merits of plaintiff's sexual harassment claim and, thus, declines to address certain arguments made by defendant concerning employer liability and administrative exhaustion issues. For this reason, many of the facts recited by the parties in their papers have not been included here as they are not relevant to the court's analysis.

**2.** It is unclear from the record when plaintiff actually began her employment with defendant. In her papers, plaintiff states that she began her employment in March 1997 as a "distribution clerk," but makes reference to this July 1995 incident when she was training to be a "window distribution clerk." In any event, it is clear that July 1995 was the first time that plaintiff had contact with Mr. Strauss.

October 1999, Mr. Strauss transferred to another facility.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

In the pretrial order, plaintiff claims that, during her employment with defendant, she was subjected to sexual harassment by her supervisor, Daniel Strauss. According to plaintiff, the harassment that she suffered at the hands of Mr. Strauss included "unwanted touching and rubbing, staring, harassment of other women in her presence, and grabbing [plaintiff] by the arms and holding her against her will." Plaintiff further claims that, after she filed a formal EEO complaint on March 2, 1999 concerning Mr. Strauss's behavior, Mr. Strauss retaliated against her by trying to convince her to drop her EEO complaint on March 4, 1999 and, after those efforts failed, by walking by her work station and staring at her.

In support of its motion for summary judgment, defendant contends that plaintiff cannot establish a prima facie case of sexual harassment because the conduct of which plaintiff complains was not based on

plaintiff's sex and/or was neither sufficiently severe nor sufficiently pervasive to alter the conditions of plaintiff's employment and create an abusive working environment. With respect to plaintiff's retaliation claim, defendant maintains that plaintiff cannot establish a prima facie case because she cannot show that she suffered any adverse employment action. As set forth below, the court agrees with defendant that plaintiff has failed to establish a prima facie case of sexual harassment and has failed to establish a prima facie case of retaliation. Accordingly, summary judgment in favor of defendant is appropriate on both claims.

### A. Plaintiff's Sexual Harassment Claim

█ Plaintiff's sexual harassment claim is based solely on the conduct of her supervisor, Mr. Strauss. Some of the conduct about which plaintiff complains was directed at plaintiff's female coworkers; the remainder of the conduct about which plaintiff complains was directed at plaintiff. The court first addresses that conduct that was directed at plaintiff's coworkers or, as characterized by plaintiff, Mr. Strauss's alleged "harassment" of other women in the office, particularly Leticia Stumpner and Rhonda Ford. In that regard, plaintiff averred that from March 1997 through February 1999 she "repeatedly" saw Ms. Stumpner "hugging with Dan Strauss." She further testified that she saw Ms. Ford and Mr. Strauss "hug, rub their hands up and down each other's backs several times." Plaintiff also states in her affidavit that she "knows of Dan giving Leticia numerous back rubs while she worked." It is unclear from this statement whether plaintiff actually witnessed these backrubs or whether she heard about them from someone else. In her EEO investigative affidavit, plaintiff states that she has seen Mr. Strauss "running his fingers through womens' hair." Plaintiff does not provide any details, however, regarding whose hair Mr. Strauss allegedly stroked or how often she witnessed this behavior. In her deposition, plaintiff testified that she witnessed Mr. Strauss run his fingers through Ms. Stumpner's hair on only one occasion. Finally, plaintiff averred that on one occasion in September 1997 she saw Mr. Strauss "walking side by side with Francine Hansen ... with his body pressed against hers, and his hand on her neck, under her hair." [3]

---

**3.** In her papers, plaintiff provides a number of facts regarding a female employee named LaNell Cox. Ms. Cox testified, for example, that Mr. Strauss bumped into her "a lot of times," touched her upper thigh on one occasion, touched her arm, ran his fingers through her hair and, on one occasion, showed Ms. Cox a picture of a woman on a magazine cover wearing nightwear and told her "You would look good in something like this." Apparently, Ms. Cox objected to Mr. Strauss's conduct and reported it on several occasions. It is unclear whether plaintiff presents these facts simply to show that defendant had knowledge of Mr. Strauss's behavior (in response to defendant's employer liability arguments) or in an effort to further buttress plaintiff's claim that her own environment was hostile. To the extent these facts go to the employer liability issue, they are not relevant because the court declines to address that issue. To the extent these facts are offered in an attempt to buttress plaintiff's claim, they are not relevant because there is no evidence that plaintiff was aware of Mr. Strauss's alleged harassment of Ms. Cox at the relevant time period. See *Hirase–Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 782 (10th Cir.1995) (plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment"). The same analysis applies to plaintiff's proffered facts concerning Georgia Watson (a female employee who testified that Mr. Strauss "propositioned" her in 1982 or 1983) and Gail Shelton (a female employee who testified that Mr. Strauss complimented her

As plaintiff argues, it is true that incidents of sexual harassment directed at others and not the plaintiff can have some relevance in demonstrating the existence of a hostile work environment. *See, e.g., Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 782 (10th Cir. 1995). The problem with plaintiff's argument here, however, is that the conduct about which she complains was consensual. Ms. Stumpner, for example, testified that she "got along with [Mr. Strauss] just great" and that it never bothered her when Mr. Strauss would put his arm around her or touched her (which, according to Ms. Stumpner, did not happen very often). Although she considered Mr. Strauss a friend and testified that she had a good rapport with him, she stated that she and Mr. Strauss did not "hug" very often. As Ms. Stumpner described herself:

> I'm a hugger. That's the way I was brought up. And if I feel like coming up and saying hello to somebody, giving them a hug or a pat on the back, I mean, I just do that.

In short, Ms. Stumpner's testimony clearly indicates that she was not offended by Mr. Strauss's conduct and, in fact, that she welcomed that conduct.[4] Similarly, Ms. Ford testified that she never felt uncomfortable when Mr. Strauss touched her (touchings which Ms. Ford described as a touch "on the arm to get my attention, not

in a sexual way") and that Mr. Strauss never touched her inappropriately. Although Ms. Ford denied that Mr. Strauss had ever given her a backrub, she recalled one occasion when she had stress in her shoulder and Mr. Strauss rubbed her shoulder. As Ms. Ford testified, she did not object to Mr. Strauss's behavior because she "had stress in [her] neck." Plaintiff's only evidence that Mr. Strauss's conduct with respect to Ms. Stumpner, Ms. Ford and/or Ms. Hansen was not consensual is her own subjective belief-she states in her affidavit that she "believe[s] that the touching incidents ... were not consensual" and that "none of the women who I saw Mr. Strauss touching-Ms. Ford, Ms. Stumpner, or Ms. Hansen-ever told me that they welcomed his touching, or that it was consensual." Plaintiff's mere assumption or guess that this conduct was unwelcome is insufficient to create a fact issue for trial in light of Ms. Stumpner's and Ms. Ford's unequivocal testimony that the conduct was consensual.[5] Thus, the question becomes whether plaintiff is entitled to a jury trial on her sexual harassment claim based on a showing of consensual, affectionate interactions between her supervisor and certain coworkers. The clear answer is "no." The laws against sexual harassment were not designed to purge the workplace of all physical contact between supervisors and subordinates or to prevent consensual affectionate interac-

---

on a daily basis in 1991 and 1992 and asked her to go bike riding with him).

**4.** In her deposition, Ms. Stumpner could not recall that Mr. Strauss had ever run his fingers through her hair. She testified, however, that because of her relationship with Mr. Strauss, she "wouldn't mind something like that."

**5.** The record does not contain testimony from Ms. Hansen regarding the September 1997 incident described by plaintiff. Even assum-

ing, however, that this incident was not welcomed by Ms. Hansen, it would be insufficient to create a fact issue for trial on plaintiff's claim. The impact of an isolated incident such as the one described by plaintiff between Mr. Strauss and Ms. Hansen-not directed in any way at plaintiff-simply adds very little to plaintiff's claim. See *Cowan v. Prudential Ins. Co. of Am.,* 141 F.3d 751, 758 (7th Cir. 1998) ("second-hand harassment" is "obviously not as great as the impact of harassment directed at the plaintiff").

tions between supervisors and subordinates. *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment.... We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace-such as male-on-male horseplay or intersexual flirtation-for discriminatory 'conditions of employment.' "). While it is possible that consensual behavior can create an offensive environment if "sexual discourse displaced standard business procedure in a way that prevented plaintiff from working in an environment in which she could be evaluated on grounds other than her sexuality," *see Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 862 (3rd Cir.1990), plaintiff has not shown that any such behavior existed in her workplace. She simply has not shown that the affectionate interactions between Mr. Strauss and female employees were so prevalent or pervasive as to affect the terms and conditions of plaintiff's employment. *See Alvey v. Rayovac Corp.,* 922 F.Supp. 1315, 1331 (W.D.Wis.1996) (granting defendant's motion for judgment as a matter of law on plaintiff's sexual harassment claim in part because plaintiff could not show that consensual affectionate interactions between coworkers that she observed displaced standard business procedure). In fact, plaintiff does not even allege that she was offended by or uncomfortable with Mr. Strauss's interactions with Ms. Stumpner and Ms. Ford.

The court, then, turns to plaintiff's remaining allegations or, more specifically, Mr. Strauss's conduct with respect to plaintiff. Plaintiff's evidence suggests that Mr. Strauss, on occasion, engaged in acts of unwanted physical contact with plaintiff. Putting aside for the moment plaintiff's allegation that Mr. Strauss patted her inner thigh, none of the acts of which plaintiff complains are sexual in nature or appear to be in any way related to plaintiff's gender. As the Supreme Court has reiterated, Title VII prohibits an employer from discriminating against an employee with respect to "compensation, terms, conditions, or privileges" of employment "because of such individual's ... sex." *See Oncale,* 523 U.S. at 78, 118 S.Ct. 998 (citing 42 U.S.C. § 2000e–2(a)(1)); *accord Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1261 (10th Cir.1998) (same). While it is well established that this prohibition encompasses sexual harassment in the workplace, *see, e.g., Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir. 1998), it is clear that "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1365 (10th Cir.1997) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *accord Oncale,* 523 U.S. at 80, 118 S.Ct. 998 ("Title VII does not prohibit all verbal or physical harassment in the workplace."). Rather, Title VII is directed only at discrimination "because of ... sex." *See Oncale,* 523 U.S. at 80, 118 S.Ct. 998. In determining whether workplace harassment constitutes discrimination "because of sex," the "critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *See id.* (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

█ Plaintiff's evidence with respect to the February 1999 incident is simply that Mr. Strauss grabbed and then held plaintiff's upper arms for approximately 10 to 15 seconds while, in plaintiff's own words, he "very calmly" told plaintiff to "get the mail around to the carriers." When plaintiff said "okay," Mr. Strauss let go of her arms. There is simply no evidence in the record (and plaintiff does not even seem to suggest) that this act was based on plaintiff's sex. While plaintiff makes much of the fact that this incident occurred shortly after Mr. Strauss had a "shouting match" with a (male) supervisor, that plaintiff was therefore "terribly afraid" when he held her and that he was standing very close to her, these facts do not suggest that the conduct was based on sex. To be sure, Mr. Strauss's conduct may have been inappropriate and even frightening for plaintiff. In the context described by plaintiff, however, the conduct simply does not constitute discrimination "because of sex." Similarly, plaintiff's evidence with respect to the June 1998 incident demonstrates only that Mr. Strauss "firmly" grabbed plaintiff's wrist while giving her a work-related instruction. According to plaintiff, prior to grabbing her wrist, Mr. Strauss had started talking to plaintiff about a work-related issue. She interrupted Mr. Strauss to try to explain something to him and he grabbed her wrist "basically to get [her] to be quiet," as she put it, so that he could finish telling her what he needed to tell her. He left immediately thereafter. Again, there is no evidence that this act was based on plaintiff's sex.

In fact, defendant's evidence demonstrates that Mr. Strauss would frequently touch both male and female employees on the arm or on the shoulder when emphasizing a work-related point. Mike Darling, another supervisor in plaintiff's workplace, testified that he witnessed Mr. Strauss touching both male and female employees on the shoulder or arm when communicating a work-related instruction or discussing a work-related issue. Mr. Darling also testified that Mr. Strauss would touch him on the arm or shoulder in an effort to get his attention when discussing work-related issues. Plaintiff has not controverted this evidence. Plaintiff merely highlights that Mr. Strauss did not hug, hold hands with, give back rubs to, or run his fingers through the hair of male employees. Assuming this is true, plaintiff's argument loses sight of the appropriate standard for analyzing whether conduct is based on sex—whether members of one sex are exposed to *disadvantageous* terms or conditions of employment to which members of the other sex are not exposed. As set forth above, the uncontroverted evidence in this record is that to the extent Mr. Strauss was hugging, holding hands with, or giving back rubs to female employees, such conduct was consensual. Thus, no reasonable jury could find that these women were exposed to disadvantageous terms or conditions of employment to which male employees were not exposed. In other words, no jury could conclude that female employees were treated worse than male employees where the particular physical contact was welcomed and, in fact, invited by the female employees.

█ With respect to plaintiff's allegation that Mr. Strauss "hit [her] occasionally on the arm or back as if he were swatting a fly," plaintiff provides the court with no additional facts or testimony about these contacts. In the absence of any other evidentiary detail, no reasonable jury could conclude that these contacts constituted discrimination "because of sex." In fact, plaintiff does not even suggest in her affidavit that these contacts were sexual in any way or that she perceived the contacts to be related to her gender. Similarly, plaintiff does not suggest that Mr.

Strauss's bumping her or rubbing his shoulder against her back on three or four occasions had anything to do with her gender or that these contacts were sexual in nature. Plaintiff testified only that she believed he bumped into her "to show [her] who was boss."[6] The court recognizes, of course, that "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *See O'Shea v. Yellow Technology Servs., Inc.,* 185 F.3d 1093, 1097 (10th Cir.1999). Plaintiff, however, has not come forward with any evidence of gender-discriminatory conduct. As set forth above, the only contacts which on their face appear to be sexual in nature are those consensual (and, thus, in this context, nondiscriminatory) contacts with female employees-hugging, holding hands and the like.[7]

Moreover, these incidents of physical contact are simply not sufficiently severe or pervasive to constitute sexual harassment within the meaning of Title VII. As another judge in this district has recognized, "physical contact ... is not a touch-

stone triggering the applicability of Title VII." *See Gillum v. Federal Home Loan Bank,* 970 F.Supp. 843, 852 (D.Kan.1997) (quoting *McCrackin v. LabOne, Inc.,* 903 F.Supp. 1430 (D.Kan.1995) (no Title VII violation where supervisor rubbed employee's shoulders on three or four occasions)), *aff'd, Penry v. Federal Home Loan Bank,* 155 F.3d 1257 (10th Cir.1998). In cases where courts have found physical contact to constitute sexual harassment, the conduct has usually been much more egregious than the conduct described by plaintiff here and has been at least arguably sexual in nature. *Compare Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1072 (10th Cir.1998) (harassing conduct of two customers sufficient for rational jury to find abusive work environment where one customer pulled plaintiff's hair, grabbed her breast and placed his mouth on it); *and Davis v. United States Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir.1998) (harassing conduct of plaintiff's coworker sufficient for rational jury to find hostile work environment where plaintiff was subjected to regular unwelcome hugging and kissing by coworker and on one occasion coworker approached plaintiff from behind, grabbed

---

**6.** Plaintiff suggests that this conduct is sex-based because it illustrates Mr. Strauss's male dominance over females in captive situations. The court rejects this argument. See *Gillum v. Federal Home Loan Bank,* 970 F.Supp. 843, 849 (D.Kan.1997) (rejecting theory where plaintiff offered no legal support for "male dominance" theory-supervisor placed his hands on plaintiff's shoulders-and conduct was "gender-neutral buffoonery"; fact that plaintiff may have been isolated in cubicle or captive in supervisor's car "does not convert gender-neutral pranks or mere offensive behavior into conduct motivated by sexual animus or gender bias"), aff'd, *Penry v. Federal Home Loan Bank,* 155 F.3d 1257 (10th Cir. 1998). Significantly, plaintiff has not shown that Mr. Strauss touched or "bumped into" females in the office as opposed to men. Defendant's uncontroverted evidence, as described in the text of this opinion, shows that

Mr. Strauss routinely touched the shoulders and arms of both men and women in the workplace when communicating about work-related issues. In light of the uncontroverted evidence that these type of physical contact was gender-neutral, plaintiff's "male dominance" theory fails.

**7.** To the extent plaintiff claims that Mr. Strauss's physical contacts with her were arguably sexual in nature because of the sexual (albeit consensual) nature of his contacts with Ms. Stumpner and Ms. Ford, the court rejects this argument. While the argument might have more force if Mr. Strauss's touching *plaintiff was substantively similar to his* touchings of other women (e.g., hugging), the uncontroverted evidence here is that he did not touch plaintiff in the same way as he touched Ms. Stumpner and Ms. Ford.

her by the hips, and thrust his pelvis against her) *with Penry*, 155 F.3d at 1261–63 (affirming summary judgment on plaintiff's sexual harassment claim where plaintiff complained of unwanted physical contact including supervisor touching plaintiff's shoulder on occasion, brushing against plaintiff as he passed behind her, and periodically touching plaintiff's arms or hands with his arms in a "slow and meaningful" manner).

Plaintiff also alleges that she was forced to avoid or "dodge" Mr. Strauss's efforts to touch or bump her at least 20 to 30 times, or several times each month. Consistent with that allegation, one of plaintiff's co-workers, Tracy Bailey, testified that she saw plaintiff "literally jerk away" from Mr. Strauss to avoid him touching her. Ms. Bailey, however, could only remember one specific incident in which she saw this occur. According to Ms. Bailey, after plaintiff jerked away from Mr. Strauss, he said something to her which Ms. Bailey characterizes as "flirtatious" like "I'm not going to bite you," or "Your hair looks nice today." As an initial matter, the mere fact that plaintiff felt forced to dodge Mr. Strauss's effort to touch her is not relevant in light of the court's conclusion that no reasonable jury could find that these touchings (or attempts to touch) were based on sex. In other words, a sexual harassment claim that falls short of a Title VII violation because the alleged harasser is an annoying jerk to members of both sexes (*i.e.*, the conduct is not based on sex) is not converted into a viable Title VII claim simply because the plaintiff felt forced to take "extreme measures" to avoid the alleged harasser. Moreover, even assuming the conduct was based on sex, plaintiff's allegations that she was forced to take "extreme measures" to avoid Mr. Strauss's contacts would be rele-

vant only if she showed that those measures interfered with her performance or otherwise affected her environment. Here, plaintiff makes no allegation that her efforts to avoid Mr. Strauss interfered with her job or otherwise affected her work environment. Finally, Ms. Bailey's testimony is insufficient, standing alone and in the limited context provided by Ms. Bailey, to permit a jury to infer that Mr. Strauss's conduct was based on sex.

■ Of all the conduct about which plaintiff complains, the most serious is Mr. Strauss's placing his hand on plaintiff's inner thigh. Assuming for purposes of this motion that Mr. Strauss patted plaintiff's inner thigh, he should not have done so. But this is the only incident of which plaintiff complains that is even arguably sexual in nature [8] during the course of her working relationship with Mr. Strauss. The incident was momentary and was not coupled with any verbal suggestions or advances. Mr. Strauss was not sitting next to plaintiff at the time-she was sitting and he was standing next to her. This incident, then, is insufficient-either standing alone or in connection with plaintiff's other allegations-to state a claim for sexual harassment within the meaning of Title VII. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 585 (11th Cir.2000) (reversing jury verdict for plaintiff on sexual harassment claim where supervisor, among other things, placed his hand on plaintiff's knee once and touched the hem of her dress once), *cert. denied*, 531 U.S. 1076, 121 S.Ct. 772, 148 L.Ed.2d 671 (2001).

In sum, after carefully considering plaintiff's evidence concerning the alleged conduct, the totality of the circumstances, and the applicable standard for analyzing a sexual harassment claim, the court con-

---

**8.** In her affidavit, plaintiff states that she per-

ceived this contact as a "sexual advance."

cludes that plaintiff has not made a sufficient showing to withstand summary judgment on this claim. Accordingly, the court grants defendant's motion for summary judgment on this claim. In doing so, the court does not condone Mr. Strauss's behavior. Assuming plaintiff's allegations to be true, Mr. Strauss certainly lacks a degree of sensitivity in communicating with his employees and, on occasion, has shown a lack of judgment and perhaps control when communicating with plaintiff. But while Mr. Strauss's physical contacts with plaintiff may give rise to a claim for battery, they do not give rise to an actionable sexual harassment claim in the absence of any evidence that these physical contacts constituted discrimination "because of sex." and in the absence of evidence that the contacts were sufficiently severe or pervasive.

● Plaintiff's Retaliation Claim

■ In addition to her sexual harassment claim, plaintiff asserts a retaliation claim against defendant based primarily on Mr. Strauss's comments to plaintiff just two days after plaintiff filed a formal EEO complaint. According to plaintiff, on March 4, 1999, Mr. Strauss approached her at work and stated "I know you have a family and want your days off" and "I thought you and I were friends, so why did you go outside the unit, because we could have resolved the problem here." Plaintiff avers that she "interpreted these statements to mean that he would give me favorable scheduling treatment in the future if I would cooperate by not pursuing the complaint." Plaintiff further avers that Mr. Strauss told her several times during this conversation, "You will have to excuse me, I am just a man." Finally, plaintiff testified that after her March 4, 1999 conversation with Mr. Strauss, Mr. Strauss did not speak to her or come near her, but he would "walk right by me and

stare at me while he walked by." Plaintiff points to evidence demonstrating the frequency or duration of Mr. Strauss's stares. Plaintiff's retaliation claim, then, is based on the comments made by Mr. Strauss on March 4, 1999 and his staring at her thereafter.

As plaintiff concedes that she has no direct evidence of retaliatory motive, the court analyzes plaintiff's retaliation claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *McGarry v. Board of County Commr's*, 175 F.3d 1193, 1201 (10th Cir. 1999). To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. See *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001) (citations omitted). Once plaintiff establishes her prima facie case, the burden shifts to defendant to articulate a legitimate, nonretaliatory reason for its actions. See *id.* If defendant meets its burden, then plaintiff must respond by showing that there is a genuine dispute of material fact as to whether defendant's asserted reasons for the challenged action are pretextual. See *id.*

According to defendant, plaintiff cannot satisfy the second element of her prima facie case of retaliation. Specifically, defendant maintains that Mr. Strauss's comments on March 4, 1999 and his stares thereafter simply do not constitute an "adverse employment action" even under the Tenth Circuit's liberal interpretation of that phrase. See *Jeffries v. Kansas*, 147 F.3d 1220, 1231–32 (10th Cir.1998). The court agrees. Significantly, plaintiff has not alleged that Mr. Strauss's conduct had

any impact whatsoever on her employment status. She has not alleged that his conduct altered her compensation, terms, conditions or privileges of employment. In these circumstances, the Tenth Circuit has repeatedly rejected retaliation claims. For example, in *Amro v. Boeing Co.*, 232 F.3d 790 (10th Cir.2000), the Circuit rejected a retaliation claim based on a supervisor's alleged retaliatory harassment of the plaintiff because the plaintiff failed to demonstrate that his supervisor's conduct amounted to an adverse employment action. See *id.* at 799. In that case, the plaintiff alleged that his supervisor, after attending a meeting in which the plaintiff advised his supervisor that he thought he was discriminating against him, called him a "fucking foreigner;" placed his hands around the plaintiff's neck and patted him down, apparently to ascertain whether the plaintiff had a tape recorder; threw drawing papers at the plaintiff, causing a paper cut on plaintiff's neck; demanded to search through a folder that the plaintiff was carrying; and, on two other occasions, spoke unpleasantly to the plaintiff. See *id.* at 795. According to the Circuit, the "unpleasant and vulgar" encounters that the plaintiff had with his supervisor were simply not "sufficiently negative and pervasive to create an adverse employment action." See *id.* at 798. The Circuit ultimately agreed with the district court that "such treatment without more did not materially affect the terms and conditions of [the plaintiff's] employment. It was not severe or pervasive enough to be an adverse employment action." See *id.* (affirming grant of summary judgment).

Similarly, in *Heno v. Sprint/United Management Co.*, 208 F.3d 847 (10th Cir. 2000), the Circuit rejected the plaintiff's "retaliatory harassment" claim where the plaintiff failed to demonstrate that her supervisor's conduct amounted to an adverse employment action. See *id.* at 857–58.

There, the plaintiff showed that her desk was moved to a different location; her telephone calls were monitored; her supervisor and coworkers acted in a "chilly" manner towards her, which made her feel isolated; the human resources department refused to further investigate her complaint once they found out she filed an EEOC complaint; and her supervisor suggested that she might wish to transfer to another department because her department was shifting to a commission format in which the plaintiff had previously struggled. See *id.* at 857. Affirming the district court's grant of summary judgment, the Circuit stated:

> These facts do not rise to the level of an adverse employment action. "Retaliatory conduct other than discharge or refusal to hire is ... proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'" Ms. Heno was working in the same job, for the same pay, with the same benefits. Moving her desk, monitoring her calls, being "chilly" towards her, and suggesting that she might do better in a different department simply did not affect Ms. Heno's employment status.

See *id.* (alterations in original) (citation omitted).

In *Sanchez v. Denver Public Schools*, 164 F.3d 527 (10th Cir.1998), the Circuit again affirmed the district court's grant of summary judgment to the defendant on the plaintiff's "retaliatory harassment" claim where the plaintiff failed to demonstrate that her supervisor's conduct amounted to an adverse employment action. See *id.* at 533. The plaintiff in Sanchez alleged that her supervisor, in retaliation for plaintiff's filing an EEOC complaint, made several ageist remarks;

required her (but no one else) to bring a doctor's note when she was sick; threatened to write her up for insubordination; and threatened to put her on a plan for improvement. See *id.* Analyzing these allegations, the Circuit stated:

> This conduct simply does not rise to the level of a materially adverse employment action sufficient to satisfy the second prong of the prima facie case. Courts considering the issue have held that " 'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' " such as those alleged here are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status.
>
> . . . . It follows that "not everything that makes an employee unhappy" qualifies as retaliation, for "otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.' "

See *id.* (citations and quotations omitted). Affirming the district court's grant of summary judgment, the Circuit concluded that the conduct of the plaintiff's supervisor "did not significantly affect her employment status and therefore did not constitute adverse employment action remediable under Title VII." See *id.*

Plaintiff's allegations here are far less severe than those set forth in Amro, Heno and Sanchez. Even assuming Mr. Strauss suggested that plaintiff drop her EEO complaint, there is nothing derogatory, demeaning or distressing about such a request. Moreover, plaintiff does not allege that Mr. Strauss threatened plaintiff with any action if she refused to drop her charge. In any event, such a request is certainly not severe enough to constitute an adverse employment action. Moreover, with respect to plaintiff's allegations that Mr. Strauss would walk by her work station and stare at her, there is no evidence in the record concerning the frequency of these "stares" and no evidence that Mr. Strauss's alleged staring had any effect on plaintiff at all. In support of her allegation that Mr. Strauss would stare at her, plaintiff refers only to the following deposition excerpt:

- [Y]ou had no contact with Mr. Strauss after March 4th of 1999; is that correct?

A: He was still in the building until October.

Q: But you had no contact with him, did you?

A: He'd walk by and stare at me. But, no, he didn't say anything to me. . . . He didn't come close to me. He stared at me from the other, you know, other side of the building. He didn't walk 3 feet from me. He might have been 10 feet away from me.

Q: So give me an example of a situation where that occurred?

- I'd be working, and he'd walk from his office to a subordinate's office. And walk right by me and stare at me while he walked by.

- And how did you know he was staring at you?

- I looked up to see who it was.

- Would you watch him then go into his office or go into the subordinate's office?

- No. I'd look back down at my work.

This excerpt fails to explain how often Mr. Strauss stared at plaintiff and what effect, if any, his staring had on her. In the absence of such evidence, the court cannot conclude that Mr. Strauss's staring was severe or pervasive enough to constitute an adverse employment action.

In sum, plaintiff has failed to demonstrate that Mr. Strauss's conduct altered

or affected her employment in any way. Thus, because plaintiff has failed to present sufficient evidence from which a reasonable jury could conclude that she suffered an adverse employment action, summary judgment in favor of defendant is appropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. #50) is granted. Plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**