[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12137
Non-Argument Calendar
_____

D. C. Docket No. 06-00506-CV-T-26-MAP

RHONDA RASPANTI,

Plaintiff-Appellant,

versus

FOUR AMIGOS TRAVEL, INC.,
RONALD M. SCHLOM,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 29, 2008)**

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Rhonda Raspanti appeals the summary judgment in favor of her former employer, Four Amigos Travel, Inc., and Ronald M. Schlom, and against her complaint of retaliation under the Fair Labor Standards Act of 1938. 29 U.S.C. § 215(a)(3). The district court concluded that Raspanti failed to establish a prima facie case of retaliatory discharge and was unable to rebut the legitimate reasons offered by the Four Amigos for her termination. We affirm.

## I. BACKGROUND

Four Amigos is a Florida corporation with its headquarters in Ft. Lauderdale, and Ronald M. Schlom is its president. During the period relevant to Raspanti's complaint, Four Amigos operated call centers in Ft. Lauderdale and Largo, Florida, that received inbound telephone calls from prospective customers inquiring about Florida vacation packages advertised in direct mail marketing materials. Raspanti began working for Four Amigos in the Largo center on September 1, 2001.

On July 26, 2004, two former employees sued Four Amigos for alleged violations of the FLSA (the "Martinez lawsuit"). On April 6, 2005, Raspanti joined the Martinez lawsuit as an opt-in plaintiff, and Four Amigos received immediate notice of Raspanti's participation. During the litigation, a coworker of Raspanti, Willard Kuhn, filed an affidavit to support Four Amigos. The parties settled the suit on September 20, 2005.

On October 24, 2005, Hurricane Wilma caused severe damage to the Ft. Lauderdale location of Four Amigos. That center suffered a dramatic reduction in phone lines, and the company reduced its direct mail marketing. The Largo location became the operable call center for the company. The marketability of the Florida vacation packages also suffered due to public concern with weather conditions. As a result, Four Amigos suffered a reduction in caller traffic and lost two thirds of its revenue.

In response, Four Amigos decided to terminate less productive employees or, as termed by Four Amigos, "its dead weight." The company targeted employees who had the three following characteristics: 1) low to moderate sales; 2) high cancellation rates; and 3) negative attitudes. Four Amigos based the terminations on sales and cancellation data collected over a 14-week period. More than 94 employees were terminated or resigned within 100 days of the hurricane.

On November 28, 2005, Schlom participated in a telephone conference with Raspanti and her coemployee Whitney Updegraff and discharged them due to their respective low sales and high cancellation rates. According to the data collected, Raspanti earned $3,487.50 and had a 28 percent cancellation rate, while Updegraff earned $5,006.25 and had an 18 percent cancellation rate. Derek May, the General Manager of the Largo call center, testified that Raspanti's negative attitude was a

3

factor in the decision to terminate her. Willard Kuhn, who also had a high cancellation rate and negativity problems, was fired as well.

Raspanti filed suit in Pinellas County, Florida and alleged that Four Amigos fired her in retaliation for her participation in the <u>Martinez</u> lawsuit. Four Amigos removed the action to the United States District Court for the Middle District of Florida. The district court granted summary judgment in favor of Four Amigos. The district court concluded that Raspanti failed to establish a causal connection between her discharge and her protected activity and that Four Amigos provided a legitimate nonretaliatory reason for Raspanti's discharge, which Raspanti failed to rebut as pretextual.

## II. STANDARD OF REVIEW

We review a grant of summary judgment <u>de novo</u> and review the evidence in the light most favorable to the nonmoving party. <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is thereby entitled to judgment as a matter of law. <u>Id.</u> Summary judgment should be awarded "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct.

4

2548, 2552 (1986).

## III. DISCUSSION

Raspanti challenges the conclusions of the district court that she failed to establish either a prima facie case of retaliatory discharge under the FLSA or that the reasons for her discharge were pretextual. When, as here, a plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). Under that framework, the plaintiff must first establish a prima facie case of retaliation. Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342–43 (11th Cir. 2000). The employer then must articulate a legitimate nonretaliatory reason for the adverse employment action. Id. If the employer meets this burden of production, then the plaintiff must establish that the proffered reason is pretextual. Id. The record supports the conclusions of the district court that Raspanti did not either establish a prima facie case or establish that the reasons for her discharge were pretextual.

*A. Raspanti Did Not Establish a Causal Relation Between The Protected Activity and Discharge.*

It is "unlawful for any person . . . to discharge . . . [an] employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). A claimant

5

establishes a prima facie case under Section 215(a)(3) by establishing three elements: "(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." Wolf, 200 F.3d at 1342–43 (quoting Richmond v. ONEOK, Inc., 120 F.3d 205, 208–09 (10th Cir. 1997)) (internal quotation marks omitted). The parties do not dispute that the first two elements are satisfied. We address only the final element of causation.

To establish a causal relation, Raspanti had to prove that "she would not have been fired but for her assertion of FLSA rights." Wolf, 200 F.3d at 1343. A plaintiff can satisfy this burden if she can prove a "close temporal proximity" between the time her employer learned about her protected activity and her discharge. Thomas, 506 F.3d at 1364. This standard requires that the actions be "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)). A delay of "three to four month[s]" does not suffice. Thomas, 506 F.3d at 1364.

Raspanti failed to prove a causal relation based on close temporal proximity. Four Amigos received notice of Raspanti's participation in the Martinez lawsuit on April 6, 2005, but Raspanti was not terminated until November 28, 2005, which

6

was seven months and three weeks later. Raspanti's discharge is too remote to her protected activity to establish causation based on temporal proximity.

Raspanti asks this Court to consider the brief amount of time between the settlement against Four Amigos in September and her discharge in November, but we begin our calculation on the date the employer gains "knowledge of the protected expression[.]" Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); see, e.g., Breeden, 532 U.S. at 273, 121 S. Ct. at 1511. Four Amigos learned about Raspanti's protected activity in April. The district court correctly relied on that date to calculate the temporal proximity.

Raspanti offers other circumstantial evidence that she argues, in combination with the proximity of her discharge, establishes a prima facie case of retaliation, but her evidence does not support her argument. Raspanti relies on Schlom's comment to Derek May - made during a discussion about Raspanti while the Martinez lawsuit was pending - that "there is a legal matter underlining this, don't want to touch it," but Schlom's comment does not support Raspanti's complaint of retaliation. To the contrary, Schlom's contemporaneous remark to May that Raspanti was "capable as hell" and instruction to deal with Raspanti's negativity by "try[ing] to get whatever is in [Raspanti's] head out of her head to the best of your ability[,]" suggested that Schlom was interested in retaining Raspanti, despite

7

her participation in the lawsuit. Raspanti also relies on May's remark to Veronica Dallam, a previous office manager at Four Amigos, that May did not believe the Martinez plaintiffs were entitled to relief, but this statement does not evidence that Raspanti's involvement in the lawsuit led to her termination. Schlom, not May, made the final decision to discharge Raspanti. See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 589 n.20 (11th Cir. 2000). That May provided information to Schlom that was considered in the decision to discharge Raspanti does not alter that conclusion. See Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1356 (11th Cir. 1999).

*B. Raspanti Did Not Rebut Four Amigos's Legitimate Reasons for Her Discharge.*

Even if Raspanti had established a causal connection between her protected activity and her discharge, she failed to prove that the reasons for her dismissal were pretextual. Four Amigos asserted that operational damage caused by Hurricane Wilma and the ensuing financial losses required the removal of unproductive employees, including Raspanti. To establish pretext, Raspanti was required to prove that "the proffered reason was not the true reason for the employment decision . . . either . . . by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation [was] unworthy of credence." Jackson v. Ala.

8

State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981)) (internal quotation marks omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Raspanti failed to establish that the reasons given by Four Amigos were pretextual because she did not present evidence that the company fabricated the hurricane damage and or that the company treated her differently from similarly situated employees. The company did not invent its business troubles. Raspanti acknowledged that Hurricane Wilma inflicted damage to the Ft. Lauderdale center one month before her discharge. She admitted that, for over seven months following her participation in the Martinez litigation, she did not experience any adverse employment action or changes in the terms or conditions of her employment. Undisputed evidence also establishes that Four Amigos suffered financial losses following the hurricane and that, within the 100 days following the disaster, more than 94 individuals resigned or were terminated. Four Amigos offered legitimate reasons for Raspanti's dismissal, including her poor productivity rates and negative attitude. Raspanti did not dispute that employees with better

9

sales figures than hers, including coworker Updegraff, were also terminated.

Raspanti likewise did not refute the argument of the company regarding her attitude. This reason, while subjective, serves as a legally sufficient reason for an adverse employment decision. Chapman, 229 F.3d at 1033 (noting that "[a]ttitude . . . and enthusiasm . . . can be vitally important" in a "job requiring continuing interaction with the public"). Although Raspanti alleges that her negative attitude was not cited at the time of her dismissal and is a new reason for her discharge, she was aware, upon learning about the Schlom-May discussion held during the Martinez lawsuit, that Schlom had directed May several months before Raspanti's dismissal to assist Raspanti to improve her attitude. Even if negativity was not cited as a reason for dismissal, negativity was a contributing factor to Raspanti's poor performance. That it was mentioned later as an elaboration on the reasons for her dismissal does not establish pretext. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332 (11th Cir. 1998). Even though Kuhn supported Four Amigos during the Martinez litigation, he was also dismissed, in part, for his negativity.

## IV. CONCLUSION

The summary judgment in favor of Four Amigos and Schlom is **AFFIRMED**.

10