FILED
United States Court of Appeals
Tenth Circuit

February 28, 2019

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

ANDREW DAVIS, a Colorado Resident,

Plaintiff - Appellant,

v.

BAE SYSTEMS TECHNOLOGY
SOLUTIONS & SERVICES INC.,
a foreign corporation,

Defendant - Appellee.

No. 18-1065
(D.C. No. 1:17-CV-00322-LTB-STV)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.
_____

Andrew Davis sued his former employer, BAE Systems Technology Solutions
& Services Inc., claiming BAE's refusal to rehire him was in retaliation for reporting
sexual harassment.  BAE filed a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6).  The district court granted that motion and dismissed Davis's
action with prejudice, ruling that Davis failed to plead facts supporting a plausible

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

inference that BAE's refusal to hire him was causally connected to his report of sexual harassment. Davis appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND[1]

Davis began working at BAE in 2011 "as a Field Service Representative and Senior Desk Side Support Analyst, providing crucial IT support for the Department of Defense." Aplt. App. at 9–10. Davis alleged that his performance was "strong," and that his supervisor, Daniel Perez, and two co-workers recognized his work as being of "high quality." *Id.* at 10. He attached to his First Amended Complaint several documents in support of these allegations regarding his performance.

In February 2013, a BAE employee complained to Davis that she was sexually harassed by her supervisor. Upon learning that BAE had "zero tolerance and mandatory reporting policies for sexual harassment," Davis reported the sexual

---

[1] Because this appeal involves a Rule 12(b)(6) dismissal, we draw the facts from the allegations in the operative pleading, which is Davis's First Amended Complaint; from exhibits submitted with it or incorporated by reference; and from "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). BAE attached two documents to its Rule 12(b)(6) motion: a discrimination charge Davis filed with the Equal Employment Opportunity Commission and the Colorado Civil Rights Division, and BAE's position statement in response to that charge. The parties do not dispute the authenticity of those documents, and they are central to Davis's claims because (1) Davis drew many of the allegations in the First Amended Complaint from them, sometimes verbatim and often without identifying the source; and (2) as we discuss later in this decision, some of those allegations rest on a misreading of BAE's explanation for its refusal to rehire him, which is a pivotal issue in this case. We therefore consider those documents in resolving this appeal.

2

harassment to BAE's department of human resources. *Id.* (internal quotation marks omitted). After this report, the victim was allegedly "pressured to recant her allegations," but nothing further was done, and she left BAE soon thereafter. *Id.* When one of BAE's supervisors, Elizabeth Schley, found out Davis had reported the harassment, she said she would make Davis's "life a living hell." *Id.* at 11 (internal quotation marks omitted).

A year after reporting the harassment, in February 2014, "BAE laid . . . Davis off, citing budgetary cuts." *Id.* At the time, Davis was allegedly "in a vital leadership role and excelling at his position." *Id.*

In November 2015, thirty-three months after reporting the sexual harassment, "Davis was recruited for a position working for BAE as a System and Server Administrator." *Id.* He alleged the position "matched his work experience and skills perfectly." *Id.* He received an offer letter that he signed and returned, expecting to start work immediately, but soon thereafter, "the recruiter . . . told him that BAE had rescinded the offer due to a 'personality conflict.'" *Id.* Perez, Davis's former supervisor, then contacted Davis and told him that "BAE's manager in charge of hiring," Robert Hermann, "asked if he should 'cringe' upon hearing Mr. Davis'[s] name." *Id.*

After Davis filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Colorado Civil Rights Division, BAE allegedly "changed its justification for not re-hiring him and claimed that it was not because of a personality conflict, but because he allegedly lacked experience working

3

with servers." *Id.* at 11–12.  Davis claimed this justification was "patently false" because he had "extensive server experience, including performing significant amounts of server work for BAE," and he had listed that experience near the top of the resume he submitted to BAE.  *Id.* at 12 (emphasis omitted).  He opined that the "demonstrably false justifications for not re-hiring [him]," combined with BAE's "explicit threat to make his life a 'living hell' for reporting sexual harassment," demonstrate that the refusal to rehire him was in retaliation for reporting sexual harassment nearly three years earlier.  *Id.*

Based on these allegations, Davis asserted claims against BAE under the retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402(1)(e)(IV).  BAE moved to dismiss under Rule 12(b)(6), arguing that retaliation could not be inferred due to the thirty-three-month gap between Davis's report of sexual harassment and BAE's refusal to rehire him, and that Davis's additional factual allegations were insufficient to bridge that gap and establish causation.  The district court granted the motion, dismissing the action with prejudice.

Davis filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), arguing that the district court erred in dismissing the action with prejudice without making a finding that amendment would be futile and without providing an opportunity for amendment (although Davis never sought leave to amend).  In support, Davis pointed to evidence he submitted with his response to the

4

Rule 12(b)(6) motion suggesting that prior to BAE's decision not to rehire Davis, Hermann may have consulted with the supervisor who was the perpetrator of the alleged sexual harassment Davis had reported. The district court denied the motion. Davis then filed a notice of appeal, designating the order granting the Rule 12(b)(6) motion, the final judgment, and the denial of his Rule 59(e) motion. But in his opening appellate brief, he argues only that the district court erred in granting the Rule 12(b)(6) motion, and in his reply brief, the posits that "[t]his appeal does not turn on" the district court's denial of his Rule 59(e) motion or its failure to permit amendment, Aplt. Reply Br. at 14–15. Accordingly, this appeal is confined to the district court's ruling on the Rule 12(b)(6) motion. *See Thomas v. IBM*, 48 F.3d 478, 482 n.2 (10th Cir. 1995) (noting that "failure to argue an issue in the appellate brief . . . constitutes waiver, even when the appellant lists the issue in the notice of appeal").

## DISCUSSION

We review a Rule 12(b)(6) dismissal de novo. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not

5

akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In our Rule 12(b)(6) analysis, we "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191. If "the allegations . . . are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] ha[s] not nudged [his] claims across the line from conceivable to plausible." *Id.* (internal quotation marks omitted). Our ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

To survive a motion to dismiss, a plaintiff does not have to establish a prima facie case of retaliation in his or her complaint, but "the elements of each alleged cause of action help to determine whether [the] [p]laintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192. The elements of a prima facie case of retaliation under Title VII are (1) that the plaintiff "engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.* at 1193 (internal quotation

6

marks omitted).[2]  Only the third element, a causal connection, is relevant to this appeal.

A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982).  But "[u]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).  The temporal proximity in this case—thirty-three months—is insufficient to establish causation by itself.  *See id.* (explaining that "a three-month period, standing alone, is insufficient to establish causation," but a one-and-a-half month gap could be sufficient).  That thirty-three month gap does not foreclose a causal connection.  *See Piercy v. Maketa*, 480 F.3d 1192, 1198–99 (10th Cir. 2007) ("[T]he passage of time does not necessarily bar a plaintiff's retaliation claim if additional evidence establishes the retaliatory motive. . . . [T]emporal remoteness is not necessarily dispositive." (emphasis omitted)).  But "our ability to draw such a causal inference from an employer's adverse action diminishes over time because we may reasonably expect (as a matter of common sense) that the embers of anger or

---

[2] Because the same analysis applies to retaliation claims under Title VII and the Colorado Anti-Discrimination Act, our disposition of Davis's Title VII claim "will necessarily also determine [his] state law claim[]." *Khalik*, 671 F.3d at 1192 n.3.

resentment that may have been inflamed by the employee's protected activity—

emotions that would underlie any retaliatory adverse action—would cool over time."

*Conroy v. Vilsack*, 707 F.3d 1163, 1182 (10th Cir. 2013).

Davis argues that the district court erred in not accepting as true his allegations

that after he filed his EEOC charge, BAE changed the reason why it decided not to

rehire him from personality conflict to lack of experience working with servers, and

that both reasons are false.[3]  He bases this argument on case law explaining that a

plaintiff may establish causation by alleging either that an employer changed its

reason for an adverse action after an employee filed an EEOC charge, thus showing

pretext, or that its reason is false.  *See Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can

reasonably infer from the falsity of the explanation that the employer is dissembling

to cover up a discriminatory purpose."); *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d

1303, 1311 (10th Cir. 2005) (per curiam) ("The timing of the change has been found

to support the inference of pretext when it occurs after significant legal proceedings

have occurred."); *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir.

---

[3] Davis raises no argument in his opening brief concerning either Schley's alleged comment that she would make his life a "living hell," his layoff in 2014, or Hermann's alleged query whether he should "cringe" at hearing Davis's name.  He has therefore waived any challenge to the district court's conclusion that no reasonable inference of retaliatory motive can be drawn from those alleged comments.  *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (explaining that issue not raised in opening brief is waived).  In his reply brief, Davis confirms our view by stating "[w]hether or not the 'living hell' and 'cringe' comments are themselves sufficient to establish causation is not at issue." Aplt. Reply at 14.

2003) ("If the employee can show that the employer's proffered reason for taking adverse action is false, the factfinder could infer that the employer was lying to conceal its retaliatory motive.").

While Davis's understanding of the law is correct, he is mistaken in applying it to his allegations regarding BAE's explanation for its refusal to rehire him. Take first his allegation that after he filed his EEOC charge, "BAE changed its justification for not re-hiring him and claimed that it was not because of a personality conflict, but because he allegedly lacked experience working with servers." Aplt. App. at 11–12. This allegation rests on a misreading of BAE's response to the charge.[4] In that response, BAE presented Robert Hermann's opinion that Davis "was . . . an average performer who did not perform well with Hermann's team." Aplt. App. at 49.[5] Stating that an employee did not perform well with a team is not meaningfully different from, or inconsistent with, stating there was a personality conflict. Because BAE's response contradicts Davis's factual allegation that BAE denied that a personality conflict was not why it refused to rehire him, we need not take Davis's allegation as true. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("Mere legal conclusions and factual allegations that

---

[4] Although the First Amended Complaint did not expressly mention BAE's position statement in response to his EEOC charge, Davis has not identified any other source of his allegation that BAE changed its explanation after he filed the charge.

[5] Hermann was "BAE's manager in charge of hiring" who made the "cringe" comment to Davis's former supervisor. Aplt. App. at 11; *see id.* at 43 (EEOC charge identifying Hermann the manager who made the "cringe" comment).

contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.").

To be sure, BAE's response to the EEOC charge added a reason for the refusal to rehire Davis—lack of server experience. But no reasonable inference of pretext can be drawn from any of his allegations that either of the reasons is false. Davis alleged he was never disciplined or coached regarding a personality conflict during his two-and-one-half years at BAE, but that does not plausibly suggest Hermann was being untruthful in an effort to cover up a retaliatory motive. *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) ("When assessing a contention of pretext, we examine the facts as they appear to the person making the [employment] decision . . . ." (internal quotation marks omitted)). Davis also alleged his former supervisor, Perez, said Davis was "respectful and open to the views and ideas of others." Aplt. App. at 11 (internal quotation marks omitted). But that opinion is not inconsistent with BAE's view that there was a personality conflict or that Davis did not perform well with Hermann's team. Davis further alleged that two other coworkers expressed favorable opinions of his abilities, and he provided those opinions in writing as exhibits to the First Amended Complaint. But nothing indicates that either of those employees was part of Hermann's team, and nothing in their opinions is inconsistent with a personality conflict or an inability to work well with Hermann's team.

As for server experience, the sole allegations in the First Amended Complaint were that the position Davis applied for "matched his work experience and skills

perfectly," *id.*, and that he had listed on his resume "extensive server experience," including "significant amounts" for BAE, *id.* at 12. His resume, which was attached to the First Amended Complaint, contained one statement under "Professional Summary" related to server experience: "Previous experience with NT 4./ 2003 Server administration to include security patching." *Id.* at 24. Davis may have made another reference to the security-patching component of that server experience when he stated, in a section describing his "Professional Experience" at BAE: "Field [d]irected security patching while overseas." *Id.*[6] But he alleged no details about the qualifications necessary for the position. His allegation that his experience and skills matched the position perfectly is therefore conclusory and not entitled to the presumption of truth at the Rule 12(b)(6) stage. *See Khalik*, 671 F.3d at 1191 (explaining that at the Rule 12(b)(6) stage, we "disregard conclusory statements"). Furthermore, we can draw no plausible inference from his allegations regarding his server experience that he possessed at least some of the objective qualifications necessary for the position he sought. *See Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) ("Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." (internal quotation marks omitted)); *cf. EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000) ("The relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by

---

[6] The opinions of Perez and the other two coworkers do not refer to any server experience Davis might have had.

11

the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications *necessary to perform the job sought*.").

More to the point, none of Davis's allegations plausibly suggest BAE was attempting to mask an unlawful retaliatory motive by falsely claiming that there was a personality conflict, that he had not been a good fit with Hermann's team, or that his server experience was inadequate for the position he applied for. After all, Davis continued to work at BAE for a year after he reported the sexual harassment. It is precisely during that period one would expect Schley to make good on her alleged promise to make his life a "living hell." *See Conroy*, 707 F.3d at 1183 (explaining that "the time period shortly following [the] protected activity [is] the precise period when we ordinarily would expect any anger or resentment that [his] activity engendered in the [employer] to be at its apex"). Yet the First Amended Complaint is devoid of any allegations that Schley (or anyone else at BAE, for that matter) did anything retaliatory to Davis during that year, or of any allegation explaining "why one might reasonably expect [BAE's] purported retaliatory animus to have continued to burn hot over" the thirty-three month period between Davis's report of sexual harassment and the decision not to rehire him. *Id.*

Furthermore, the causation element of a prima facie case of retaliation requires a plaintiff to "show that the individuals who took adverse action against him knew of his protected opposition." *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009). Although a plaintiff is not required to establish a prima facie case in order to survive a Rule 12(b)(6) motion, the elements of a prima facie case assist in determining

whether a plaintiff "has set forth a plausible claim." *Khalik*, 671 F.3d at 1192. And we have affirmed the Rule 12(b)(6) dismissal of an action where the plaintiff "fail[ed] to aver any facts indicating [the defendant's] knowledge of his [protected activity]." *Ostler v. Anderson*, 200 F. App'x 750, 752 (10th Cir. 2006).[7] Here, Davis did not allege any facts plausibly suggesting Hermann knew that Davis had reported sexual harassment.[8] This shortcoming lends further support for our conclusion that the First Amended Complaint does not "sufficiently allege[] facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed," *Forest Guardians*, 478 F.3d at 1160, and therefore Davis has not "nudged [his] claims across the line from conceivable to plausible," *Khalik*, 671 F.3d at 1191 (internal quotation marks omitted). Accordingly, we affirm the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[7] We cite this unpublished, nonprecedential case for its persuasive value consistent with 10th Cir. R. 32.1(A).

[8] As discussed in footnote 3, *supra*, Davis has waived any challenge regarding the only alleged fact potentially bearing on that knowledge—Hermann's question to Davis's former supervisor whether he, Hermann, should "cringe" upon hearing Davis's name. But even if Davis had not waived that challenge, we would conclude that this isolated comment lacks sufficient context to support a reasonable inference that Hermann had the requisite knowledge.

13